[No. 2849.   Aug. 22, 1924]

CHAMPION COPPER v. PEYER et al.

### SYLLABUS BY THE COURT

1. Findings, supported by substantial evidence, will not be disturbed by this court.

2. Unless expenditures for machinery bear some direct relation to mining operations, they are not available as annual expenditure required by the federal. statute.

Appeal from District Court, Taos County; Leib, Judge.

Proceeding by the Champion Copper Company against J. J. Peyer and others. From a judgment for defendants, plaintiff appeals. Affirmed.

E. P. Davies, of Santa Fé, for appellant.

Wilson & Perry, of Santa Fé, and W. McKean, of Taos, for appellees.

PARKER, C. J. Appellees filed an application for patent in the United States land office at Santa Fé, for the Lilac No. 1 lode mining claim, and began publication of the required notice. Appellant in due time filed its adverse claim in the land office, and brought this action in Taos county in support thereof, claiming a portion of the ground as the Lithia lode

mining claim. A trial was held before the court, without a jury, resulting in a judgment in favor of appellees, and the case is here upon appeal. The court found against appellant upon two grounds.

[1] 1. The court found that there had never been a valid location of the ground embraced within the Lithia claim, for the reason that no sufficient location work had ever been done, and the boundaries had never been marked on the ground with monuments so that they could be readily traced, as required by law. Upon each of these points the evidence was conflicting, and the court saw and heard the witnesses. Under the settled doctrine of this court, a finding which is supported by substantial evidence, as in this case, will not be disturbed.

[2] 2. The court found that appellant had failed in its annual assessment for the year 1918. The Lithia claim was located in 1916. In 1917, appellant took advantage of the federal legislation (joint resolution of October 5, 1917, Fed. Stat. Ann. Supp. 1918, p. 461, 40 Stat. 343), and filed its notice of desire to hold the claim. In 1918 no such notice was filed, and no assessment work was done within the exterior boundaries of the claim. Counsel, however, argues that the annual assessment was performed for 1918 by means of expenditure made for machinery and property which it intended to use in mining on the claim. The position of counsel is made plain by reference to his requested finding No. 7, as follows:

"That for all the years since 1916 the annual assessment of $100 per year was either actually done or performed or legally executed by congressional legislation; that the only question raised during the trial of the said cause as to the assessment work was with respect to the year 1918, and the court finds that for said year the said annual assessment work was done by the plaintiff which consisted of the acquisition by the plaintiff, of the Glenwoody power proposition on the Rio Grande river, about 6 or 7 miles from the said Lithia lode mining claim which was purchased by the plaintiff at a cost of more than $3,000, and the plaintiff, after so acquiring the said power proposition, undertook to equip the said power plant so as to generate

electricity for use in operating machinery and apparatus
for the extracting of ore from the ground on the said
Lithia lode mining claim; that the said plaintiff was pre-
vented from perfecting the said power plant by action of
the capital issues commission; that the said expenditure
did in fact reasonably tend to promote, and would have
tended to reasonably promote, had it been completed, the
extraction of mineral from the ground on the said mining
claim, and consequently the said expenditure constituted
sufficient legal assessment work for the year 1918."

We have, then, the question whether, under the
circumstances above outlined, there was annual ex-
penditure upon appellant's claim within the require-
ments of the federal statute. It is to be noted that
what was done was to buy an old gristmill, located
some 6 or 7 miles away from the claim. It was out of
repair, and bore no relation whatever to the mine,
and never had. Appellant claimed that it intended to
reconstruct the plant, manufacture electrical energy,
and convey the same to the mine, and there use the
same in mining operations, but that is was unable to
do so on account of the conditions arising out of the
war legislation. The plant was never reconstructed;
no electrical current was ever generated; no wires were
ever strung; nothing whatever was done. It would
seem clear that the purchase of the old plant was not
annual expenditure on the mine. We have recently
examined this question in Golden Giant Mining Co. v.
Hill, 27 N. M. 124, 198 Pac. 276, 14 A. L. R. 1450.
While the facts were different in that case, the general
doctrine there announced is applicable here. Whether
such an expenditure under any circumstances would
be available as annual assessment we do not decide,
but it is clear that some direct relation between such
an expenditure and actual mining must be established
before such expenditure is available.

Some other questions are presented in the briefs,
but they need not be considered. It follows from all
of the foregoing that the judgment of the district
court was correct, and should be affirmed; and it is
so ordered.

BRATTON and BOTTS, JJ., concur.